**The STATE of Ohio, Appellee,**

v.

**MORROW, Appellant.**

[Cite as *State v. Morrow* (2000), 138 Ohio App.3d 38.]

Court of Appeals of Ohio,
Second District, Champaign County.

Nos. 99–CA–21 and 99–CA–22.

Decided June 2, 2000.

*G.S. Weithman,* for appellee.

*J. Trent Snavley,* for appellant.

---

FAIN, Judge.

Defendant-appellant Ronald E. Morrow appeals from his convictions and sentences for violating R.C. 943.14(B) (record keeping and inspection for livestock dealers) and 953.25(A) (disposal requirements for rendering plants). He contends that the trial court erred in permitting a livestock dealers license to be admitted into evidence and that the trial court erred in its application and interpretation of both R.C. 943.14(B) and 953.25(A).

We conclude that the trial court did not abuse its discretion by admitting the license. We further find that the trial court correctly applied and interpreted R.C. 943.14(B). However, we conclude that the state failed to prove that Morrow had violated R.C. 953.25(A). Accordingly, the judgment of the trial court convicting Morrow of violating R.C. 943.14(B) is affirmed. However, the judgment of conviction for violation of R.C. 953.25(A) is reversed and Morrow is discharged as to that offense.

I

On April 6, 1999, two Ohio wildlife officers observed numerous dead animals on Ronald Morrow's farm in St. Paris, Ohio. Some time thereafter, a Russian Boar was shot and killed by a resident of Champaign County; the tag on the boar was

traced to Morrow as owner. Both matters were referred to the Ohio Department of Agriculture ("the department") for investigation.

An inspector for the department met with Morrow on June 18, 1999, to inspect his records regarding the boars. The records showed that on April 14, 1999, Morrow had purchased sixty-three Russian Boars from a farm in Canada. The records also showed that between April 15 and May 18, 1999, Morrow had sold one hundred eighty-three boars. The records did not specify whether the boars he sold included any of the boars purchased from the Canadian farm.

On July 9, 1999, complaints were filed against Morrow in the Champaign County Common Pleas Court. The matter was tried before a judge, who found that Morrow had violated R.C. 943.14(B) by failing to maintain proper records regarding the Russian Boars, and that he had violated R.C. 953.25(A) by permitting rendering material (dead animals) to remain on his property. Morrow was sentenced appropriately.

Morrow appeals from his convictions and sentences.

## II

The first assignment of error is as follows:

"The trial court erred to the prejudice of the defendant-appellant when it overruled defendant-appellant's objection to the admission of evidence."

Morrow contends that the trial court abused its discretion by admitting a copy of an Ohio livestock dealer's license issued to him by the Ohio Department of Agriculture.

At trial, Morrow objected to the admission of the license on the grounds that the document constituted hearsay and did not fall within the business records exception to the hearsay rule.[1] In his appellate brief, he also contends that the document does not fall within the public records exception to the hearsay rule because it was not properly authenticated. We note that Morrow does not contend that the license is not authentic or that he was not, in fact, a licensed livestock dealer on the dates specified on the license.

Evidentiary rulings lie within the broad discretion of the trial court and will form a basis for reversal, on appeal, only upon an abuse of discretion amounting to prejudicial error. *State v. Graham* (1979), 58 Ohio St.2d 350, 352, 12 O.O.3d 317, 318, 390 N.E.2d 805, 806–807. In this case, we find that Evid.R. 803(8)(a), which excepts from the hearsay rule "records, reports, statements, or

---

1. The state contends that Morrow withdrew his objection to the exhibit and that he stipulated that it could be admitted. The record does not support this contention.

data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency * * * " is applicable to a license as a record of a state licensing agency. See Weissenberger's Ohio Evidence, Section 803.105.

■ Generally, under Evid.R. 902, if a public record is self-authenticating, no foundation is necessary. Weissenberger's Ohio Evidence, Section 803.104. However, in this case, we find no provision in Evid.R. 902 under which the license would fall.

■ Because the license was not self-authenticating under Evid.R. 902, the state needed to present some extrinsic evidence demonstrating that the license was what it purported to be. The foundational conditions for evidence introduced pursuant to Evid.R. 803(8)(a) are minimal and do not require the testimony of a custodian or other qualified witness as a precondition to admissibility. *State v. Breeze* (1993), 89 Ohio App.3d 464, 472, 624 N.E.2d 1092, 1097.

■ We find that the state presented sufficient facts to authenticate and identify the license. "The requirement of authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." *Atkins v. Gen. Motors Corp.* (1999), 132 Ohio App.3d 556, 565, 725 N.E.2d 727, 733, citing Evid.R. 901(A). An investigator for the Ohio Department of Agriculture introduced the license into evidence. He testified that he had obtained the license from the "animal industry," which is where such records are kept. He further testified that Morrow was a licensed livestock dealer on the dates specified in the license. The license shows the seal of the state of Ohio. It bears the title, "Ohio Department of Agriculture, Division of Animal Industry, Licensed Dealer in Livestock." The document also shows that it is a form used by the department, and that the form was revised in 1997. We conclude that the appearance, contents, and substance of the license, taken in conjunction with the testimony of the investigator, were sufficient to establish the document's authenticity. See Evid.R. 901(B)(4) and (7).

To the extent that Evid.R. 803(8)(a) allows for the admission of these records upon a proper foundation, that foundation has been shown and the exhibit was properly admitted. Accordingly, the first assignment of error is overruled.

### III

Morrow's second assignment of error states:

"The trial court erred in its interpretation and application of R.C. Section 943.14."

Morrow contends that he was not a livestock dealer at the time relevant to this case and that the trial court, therefore, erred by applying the recording provi-

sions of R.C. 943.14(B) to him. He also claims that the trial court erred by finding that R.C. 943.14(B) requires a livestock dealer to maintain records of the individual identification numbers of all livestock at the time of both the acquisition and the disposal of the animals. Finally, he claims that his records complied with the statute and that the trial court's finding to the contrary was not supported by the evidence.

■ We begin by addressing Morrow's claim that he was not a livestock dealer at times relevant to this case. Specifically, Morrow contends that he was not a licensed livestock dealer on April 14, 1999, the date when he purchased the Russian Boar.

We find that the trial court erred insofar as it found that Morrow was a dealer on April 14, 1999. There is no evidence in the record to support that finding. However, the evidence shows that a livestock dealer's license was issued to Morrow with an effective date of May 6, 1999, and an expiration date of March 31, 2000. Therefore, after May 6, Morrow was acting as a livestock dealer, and was subject to the reporting requirements of R.C. 943.14(B).

■ Morrow next claims that the trial court misinterpreted the recording requirements of R.C. 943.14(B), which provides:

"A dealer or broker, employee, or person described in division (B)(4) of section 943.01 of the Revised Code, who acquires or disposes of an animal by any means, shall make a record of the name and address of the person from whom the animal was acquired and to whom disposed. *The record also shall show the individual identification of each animal at the time of acquisition or disposal.* These records shall be maintained for a period of twenty-four months or longer from the date of acquisition or disposal." (Emphasis added.)

Morrow contends that the phrase "at the time of acquisition or disposal" must be read as requiring that the identification number be recorded either at the time of acquisition *or* at the time of sale, not both.

We disagree. A plain reading of the statute indicates that the provision requiring a dealer to record the identification number is meant to modify the provision requiring the dealer to record the names of the persons from whom the animals are acquired and to whom they are disposed. In other words, the livestock dealer must keep a record of persons from whom the livestock is acquired and to whom disposed, and must concurrently, upon the occurrence of either event, keep a record of the identification number.

The complaint filed against Morrow stated that he failed to provide the individual identification numbers for the boars at the time of acquisition or disposal for the period from April 14 through June 18, 1999. The complaint

further stated that the records were inspected on June 18, 1999. As stated above, Morrow was not a livestock dealer until the issuance of his license on May 6, 1999. His records indicate that he sold over sixty Russian Boars on and after May 6. Therefore, he was required to record the identification numbers for each boar sold after that date.

■ We reject Morrow's claim that his records were sufficient and that they complied with the statutory requirements. He argues that his records make cross-references to various documents, and that when viewed together, his records and the documents satisfy the requirements of R.C. 943.14(B). Specifically, he contends that his records, which were admitted into evidence as Exhibit Three, make reference to an importation record and to export certificates which were entered into the record as Exhibit One. The importation record was generated by the United States Department of Agriculture while the export certificate was generated in Canada. It was stipulated that Morrow had copies of these records in his possession.

A review of these records reveals no support for Morrow's argument. His records make no discernible reference to any other document in the record.

We find that the trial court did not err in either its interpretation, or its application, of R.C. 943.14(B). The evidence supports a finding that Morrow was a licensed livestock dealer subject to the requirements of R.C. 943.14(B). The record also supports a finding that he failed to comply with the provisions of that statute. Accordingly, the second assignment of error is overruled.

## IV

Morrow's third and fourth assignments of error state as follows:

"The trial court erred in its interpretation and application of R.C. Section 953.25.

"The trial court's verdict finding the defendant-appellant guilty of violating R.C. Section 953.25 was not supported by legally sufficient evidence."

Morrow contends that R.C. 953.25(A) is not applicable to him and that the finding that he violated its provisions is not supported by sufficient evidence.

R.C. Chapter 953 is titled "Rendering Plants." Section 953.25(A) of that chapter provides:

"In the disposal or rendering of raw rendering material, all of the following requirements shall be met:

"(1) All raw rendering material shall be processed or disposed of within forty-eight hours after its arrival at the rendering plant."

 Morrow challenges the sufficiency of the evidence by claiming that the state failed to present any evidence on one of the essential elements of the offense, specifically, the forty-eight-hour time limit for disposing of rendering material. In considering the sufficiency of the evidence, a reviewing court "examine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

In this case, the state contends that the testimony of two Ohio Department of Wildlife officers established the necessary elements of the charged crime. The state argues that since the officers were able to testify that they observed numerous animals in varying stages of decay on Morrow's farm, it affirmatively showed that Morrow had not observed the forty-eight-hour time limit set forth in the rendering statute. We disagree. A closer reading of the testimony indicates that the officers were unable to state how long the rendering materials had been on the premises or how long it would have taken to reach the varying stages of decay they observed.

Here, the evidence produced at trial, viewed in a light most favorable to the prosecution, would permit a rational trier of fact to infer that the dead animals were on the premises when the officers visited the premises. However, the record is devoid of any evidence regarding the amount of time the dead animals were on the property. Under these circumstances, we conclude that the inference drawn by the trial court—that the dead animals were on the property more than forty-eight hours—is not reasonably supported by the evidence, and that this conviction is consequently not supported by sufficient evidence.

The state having failed to establish an element of the charged offense, we conclude that the conviction must be reversed. We therefore find it unnecessary to determine whether R.C. 953.25(A) is applicable to this situation.

The fourth assignment of error is sustained, and we decline to decide the third assignment of error, in view of our disposition of the fourth assignment of error.

## V

Morrow's first and second assignments of error are overruled. Morrow's fourth assignment of error is sustained, thereby rendering his third assignment of error moot. Accordingly, Morrow's conviction and sentence for violating R.C.

943.14(B) is affirmed. However, Morrow's conviction and sentence for violating R.C. 953.25(A) is reversed, and Morrow is discharged as to that offense.

*Judgment accordingly.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.